**Johnson v. American Home Products Corp.**

*Christopher A. Gomez,* for plaintiff.
*Michael T. Scott,* for defendants.

ACKERMAN, *C.J.,* June 11, 2003—This court granted defendant Wyeth's motion for summary judgment in its order of April 24, 2003, as follows:

"Order

"And now, April 24, 2003, after review of defendant Wyeth's motion for reconsideration of this court's order dated April 11, 2003 denying said defendant's motion for summary judgment based on the statute of limitations, the plaintiff's response thereto and the defendant's reply to said plaintiff's response, it is hereby

"Ordered that:

"(1) Defendant Wyeth's motion for reconsideration of the order of this case dated April 11, 2003 is hereby granted.

"(2) This court's order dated April 11, 2003 denying defendant Wyeth's motion for summary judgment is vacated.

"(3) Defendant Wyeth's motion for summary judgment based on the fact that the statute of limitations had run prior to filing of plaintiff's complaint is hereby granted as to this defendant only on direct liability only."

The plaintiff filed a notice of appeal on May 16, 2003.

The essential facts of record are as follows:

The plaintiff alleged in her civil action complaint— short form that she ingested the following drugs relevant to this action:

"Duration of Use

"(a) Fenfluramine: *January 1997 through March 1997*

. . .

"(c) Phentermine: *January 1997 through March 1997*

"Brand name: *Phentermine HCL*" (See para. 4.)

Plaintiff alleges that she was diagnosed on or about March 30, 1999 by Dr. Beverly Stoudemire as having *valvular regurgitation* (*i.e.* heart valve regurgitation/pulmonary hypertension). (Short form complaint, para. 6.)

Plaintiff further alleges in her short form complaint that she "first learned that his/her injuries described therein were related to the ingestion of diet drugs on or about *March 30, 1999.*" (Para. 6a.)

Defendant Wyeth filed a motion for summary judgment to dismiss the case with prejudice because plaintiff's claim was brought after the statute of limitations expired.

Plaintiff commenced this lawsuit on March 5, 2002, more than two years after her admitted knowledge of the source of her physical problems (28 days short of three years and 337 days after the two-year statute had run). (See exhibit "A" at para. 6 and 6a to motion for summary judgment.)

Plaintiff verified under penalty of perjury that these statements were true; *id.* at verification of complaint, and restated and reaffirmed them at her depositions taken in January 2003. (See plaintiff's deposition, attached as exhibit "B" to motion for summary judgment at pp. 35-39.)

Plaintiff is a resident of Elinore, Alabama (see plaintiff's fact sheet attached as exhibit "C" to motion for summary judgment at p. 2), and took diet drugs while she lived and worked as a nurse in Tacoma, Washington. (See exhibit "C.")

An echocardiogram performed on March 30, 1999 reported mild mitral regurgitation. (See exhibit "D.")

Three more echocardiograms were performed on plaintiff before she filed this lawsuit:

February 29, 2000—trace mitral and tricuspid regurgitation;

August 31, 2001—no evidence of valvular dysfunction;

December 29, 2001—no significant valvular regurgitation noted. (See exhibit "E.")

Under 42 Pa.C.S. §5521(b), Pennsylvania's two-year statute of limitations applies to plaintiff's claims.

In plaintiff's response to defendant's motion for summary judgment, plaintiff notes the following:

The doctrine of equitable tolling prevents summary judgment in this case based upon the statute of limitations and cites the case of *Ravitch v. Pricewaterhouse*, 793 A.2d 939, 941, 943, 944 (Pa. Super. 2002); and *Simmons v. Cohen*, 111 Pa. Commw. 267, 286-87, 534 A.2d 140, 149 (1987) (exhibit "E" and exhibit "D," respectively, to plaintiff's response); see also, exhibit "F" of plaintiff's response citing *Verrichia v. Commonwealth of Pennsylvania, Department of Revenue*, 162 Pa. Commw. 610, 639 A.2d 957, 964 (1994).

Plaintiff provides the following chronological events in plaintiff's response to defendant's motion:

On or about September 15, 1997, the diet drugs Pondimin and Redux were withdrawn from the market by American Home Products at the behest of the United States Food and Drug Administration. Nine days later, on September 24, 1997, a class action complaint was filed in the Court of Common Pleas of Pennsylvania, Philadelphia. *In re Pennsylvania Diet Drugs Litigation*, master docket no. 9709-3162. On March 12, 1999, said class action was certified.

Thereafter, the case of *Brown v. American Home Products* was filed (October 12, 1999) for purposes of combining the claims of class members in federal and state class actions throughout the country into a single complaint. As noted in the *Preamble to the Nationwide Class Action Settlement Agreement with American Home Products Corporation* (a copy of which is attached as exhibit "G"), the *Pennsylvania Diet Drugs Litigation* (master docket no. 9709-3162) was effectively merged into the *Brown v. American Home Products* lawsuit. Subsequently, on or about March 28, 2000, plaintiff, Andrea Johnson, filed an "Orange Form no. 1," effectively opting her out of the *Brown v. American Home Products* nationwide class action settlement agreement. The present cause of action before this honorable court was filed on March 5, 2002. (See exhibit "H".)

Plaintiff argues that on March 30, 1999 any and all statute of limitations were equitably tolled as plaintiff was a member of the *In re Pennsylvania Diet Drugs Litigation* class action lawsuit (case no. 9709-3162), brought on September 24, 1997 on behalf of "all diet drug users in the State of Pennsylvania" (see p. 6 of plaintiff's response) and/or *Brown v. American Home Products* class action lawsuit (E.D. Pa. 09-20593, MD docket no. 1202), filed October 12, 1999, combining claims of all class members in federal and state courts throughout the country into a single complaint. Plaintiff claims that the time bar was March 21, 2002 because of the equitable tolling and, she filed on March 5, 2002, 16 days prior to that date because:

• September 15, 1997

*Diet drugs removed from market*

- September 24, 1997

*Pennsylvania class complaint filed*

Statute of limitation on any claim had only run for nine days at this point and was effectively tolled per *American Pipe*.

- March 29, 2000

*Plaintiff files opt-out form removing herself from class*

Any and all statutes of limitations would have begun running at this time. Two years from March 29, 2000 minus nine days (time period between September 15, 1997 and September 24, 1997) results in two-year statute of limitation date of March 21, 2002.

- March 5, 2002 plaintiff's complaint filed in Court of Common Pleas Philadelphia County (amended by agreement via short form complaint filed March 28, 2002).

It appears from plaintiff's response that if equitable tolling does not apply in this case, the statute of limitations clearly bars this claim as plaintiff relies solely on that theory in her response. *Ravitch* and *Simmons, supra*, involved Pennsylvania citizens unlike the case at bar. *Ravitch, supra*, noted on page 941 that "in Pennsylvania, an *individual action* filed in federal court does not toll the running of the statute of limitations as to an action in state court . . . Nor does the filing of an action in state court toll the statute of limitations against a subsequent action filed in federal court. . . ." (emphasis supplied) On page 943, *Ravitch, supra*, states that "Pennsylvania is devoid of any case law pertaining to whether a class action in another state's court or in federal court tolls the limitation period for a class action or individual action filed in Pennsylvania's state court."

In the case at bar, a class action in the Pennsylvania courts was filed on September 24, 1997, merged into another class action filed on October 12, 1999 in the federal court in the Eastern District of Pennsylvania.

On pages 944-45 of *Ravitch, supra,* the Pennsylvania Superior Court states:

"For those jurisdictions who do not permit cross-jurisdictional tolling, the rationale is generally the same. In *Portwood, supra,* the court noted:

"[T]olling the statute of limitations for individual actions filed after the dismissal of a *class* action is sound policy when both actions are brought in the same court system. In such instances, failing to suspend the limitations period would burden the subject court system with the protective filings described by the Supreme Court in *American Pipe* and *Crown, Cork.* . . . Tolling a state statute of limitations during the pendency of a federal *class* action, however, may actually increase the burden on that state's court system, because plaintiffs from across the country may elect to file a subsequent suit in that state solely to take advantage of the generous tolling rule. Unless all states simultaneously adopt the rule of cross-jurisdictional *class* action tolling, any state which independently does so will invite into its court a disproportionate share of suits which the federal courts have refused to certify as *class* actions after the statute of limitations has run.

"*Portwood,* 183 Ill.2d at 464-65, 701 N.E.2d at 1104, 233 Ill. Dec. at 830. We find this reasoning persuasive, especially in light in 42 Pa.C.S. §1701(a) and Pennsylvania's prohibition of cross-jurisdictional tolling for independent actions. . . .

"In conclusion, we hold that the filing of a *class* action in another state does not toll the statute of limitations as to a subsequent action filed in Pennsylvania's state court system." (emphasis added)

Our case involves the question of whether a Pennsylvania class action on behalf of all diet drug users in Pennsylvania merged into a United States District Court (in Pennsylvania) class action (combining class members in federal and state courts) tolls the statute of limitations as to the instant individual action filed in the Pennsylvania state court system.

*Verrichia, supra,* merely illustrates, in a case not factually similar to ours, that equitable tolling is still alive in Pennsylvania. Pennsylvania taxpayers were involved in that case.

In defendant's reply brief, it emphasizes that since plaintiff was not a member of the Pennsylvania class action her personal injury claim was never included in the Pennsylvania class action.

Equitable tolling, says the defendant, cannot be applied unless, inter alia, "(a) the plaintiff who filed a subsequent individual suit could have been a member of the class, and (b) the claims in both the individual suit and the class action are the same. *American Pipe and Construction Co. v. Utah,* 414 U.S. 538 (1974). Plaintiff is plainly outside the scope of persons covered by the rule set forth in *American Pipe*." (See p. 3 of defendant's reply brief.)

The Pennsylvania class action was commenced on behalf of "all Pennsylvania residents who have used fenfluramine and/or dexfenfluramine" and asserted counts for medical monitoring and violation of Penn-

sylvania's Unfair Trade Practice Law *In re Pennsylvania Diet Drugs Litigation,* 41 D.&C.4th 78, 79 (1999). (exhibit "A" to defendant's reply brief.) Plaintiff was not a member of that class action because she did not assert a count for medical monitoring.

Defendant states that *Brown, supra* could only toll the statute if the courts of this Commonwealth recognized the doctrine of cross-jurisdiction equitable tolling, which they do not; see *Ravitch, supra.*

In plaintiff's supplemental response to defendant's motion for summary judgment, plaintiff argues that defendant does not assert with any specificity when any of plaintiff's causes of action accrued. This court finds from the record that plaintiff's contention is clearly without merit as the causes of action accrued on March 30, 1999.

Next, the plaintiff argues that the three subsequent echocardiagrams somehow create an issue of fact. This court finds that plaintiff's contention is also clearly without merit as plaintiff cannot wait until she has a negative echocardiagram in order to prolong the running of the statute of limitations.

Plaintiff finally argues that the *Ravitch* case is factually different from ours in that the class action filed in the Eastern District Court in Pennsylvania in *Brown, supra,* is not a class action *in another state* as in *Ravitch, supra.* Plaintiff also asserts that public policy should permit the application of equitable tolling under the facts of this case. Plaintiff also notes that plaintiff meets the definition of a class member under *Brown, supra,* ("all persons in the United States . . . who ingested Pondimin and/or Redux.") (p. 2, memorandum of understanding concerning settlement of diet drug litigation.)

Finally, plaintiff contends that any and all of her claims concerning her diet drug use were effectively tolled beginning September 14, 1998, the date of the filing in *Jeffers v. American Home Products,* CA no. 98-CV-20626, plaintiff was clearly not a member of that class because it involved a certified nationwide medical monitoring class to which plaintiff did not belong. (See exhibit "B", pp. 10, 11, of plaintiff's response to defendant's request for reconsideration.)

This court will not exhaustively review the policy arguments provided by plaintiff for establishing equitable tolling under the facts of this case because, even if equitable tolling is appropriate, as hereinafter set forth the statute of limitations still bars this suit.

It should be noted that this court initially believed that it was *not clear and free from doubt* as to *whether or not equitable tolling applied to this case,* and thus resolved the issue in favor of plaintiff, *and denied summary judgment to defendant.* (See this court's order of April 11, 2003.) Defendant did not, until its motion for reconsideration, point out that even if equitable tolling applied in this case, the relevant statute of limitations still would have run.

Even if this court decided that the *Brown* class action could be used here to toll plaintiff's claims, *Brown* was not filed until October 12, 1999 (pointed out by the plaintiff and without using November 23, 1999, suggested by the defendant, the date Judge Bechtel of the federal court for the Eastern District of Pennsylvania granted preliminary approval of the settlement agreement in *Brown* for an order certifying and approving a nationwide settlement class embodied in the settlement agreement) (see

exhibit "B", p. 15, to plaintiff's supplemental response), and plaintiff affirmatively opted out of the *Brown* class on March 29, 2000. Thus, any tolling which could be attributed to *Brown* would not have extended plaintiff's limitations period enough to prevent summary judgment. Even using the October 12, 1999 date, the statute ran from March 30, 1999 to October 12, 1999 (six months, 10 days) and then again for another 23 months, 24 days from her opt out on March 29, 2000 to March 5, 2002, when she filed, for a total of 30 months and four days. Even accepting tolling for *Brown*, she would still have missed the statute deadline by over six months.

The statute of limitations bars this action.